UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

AT BECKLEY

T.N., in her own capacity and on
behalf of others similarly situated,

        Plaintiff,

v.                                     CIVIL ACTION NO.  5:19-cv-00558

JOHN DOE and
UNITED PF LOM, LLC and
PLA-FIT FRANCHISE, LLC and
PLANET FITNESS, INC.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending is Plaintiff T.N.'s Motion to Remand [Doc. 7], filed August 9, 2019. The matter is ready for adjudication.

**I.**

T.N. is a West Virginia citizen. Defendant John Doe is a known West Virginia resident who is the subject of an ongoing criminal investigation. As stated in T.N.'s motion to remand,

> Defendant, John Doe, is a West Virginia resident as is clearly stated in the Plaintiff's Complaint "The Defendant, John Doe, is a resident of Raleigh County, West Virginia. John Doe is the subject of a criminal investigation *whose name has not been released to the public*."

(Mot. to Rem. ¶ 5 (emphasis added); Am. Compl. ¶ 2 ("John Doe . . . is a resident of Raleigh County, West Virginia.")). Indeed, it is stated as follows in T.N.'s memorandum in support of her motion to remand:

> And while the Defendant is simply referred to as John Doe in the Complaint, the Defendant is fully aware of the identity of John Doe, is aware that he was a former employee of the Defendants' Beckley, Raleigh County, West Virginia location, is aware of a criminal investigation into his conduct, and, has terminated him.

(Pl.'s Mem. in Supp. of Mot. to Rem. at 2–3 (stating also "The individual Defendant, like the Plaintiff, was not named as there is a pending criminal investigation.")).

T.N. asserts remand is warranted inasmuch as Defendant John Doe is not diverse. The remaining Defendants assert removal was proper inasmuch as (1) John Doe was not properly served at the time of removal, and (2) fictitious parties are disregarded for diversity jurisdiction purposes.

## II.

A. **Authorities Pertinent to Ascertaining Diversity Jurisdiction**

The Supreme Court has "often explained that '[f]ederal courts are courts of limited jurisdiction.'" *Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1746 (2019) (alteration in original) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)); *see also Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978) ("The limits upon federal jurisdiction, whether imposed by the Constitution or by Congress, must be neither disregarded or evaded."). This view is in keeping with the fact that removal jurisdiction must be strictly construed in view of "significant federalism concerns." *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994); *see also Elliott v. Am. States Ins. Co.*, 883 F.3d 384, 390 (4th Cir. 2018); *see also Md. Stadium Auth. v. Ellerbe Becket, Inc.*, 407 F.3d 255, 260 (4th Cir. 2005) (stating that federal courts "are obliged to construe removal jurisdiction strictly"). One corollary to this restrictive approach is that the removing party is obliged to demonstrate that federal jurisdiction exists. *See Ellerbe Becket*, 407 F.3d at 260; *see also Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385, 390 (4th Cir. 2004) ("Subject-matter jurisdiction cannot be conferred by the

parties, nor can a defect in subject-matter jurisdiction be waived by the parties. Accordingly, questions of subject-matter jurisdiction may be raised at any point during the proceedings and may (or, more precisely, must) be raised *sua sponte* by the court.").

A statutory basis for subject matter jurisdiction arises in those "cases in which the amount in controversy exceeds $75,000 and there is diversity of citizenship among the parties . . . ." *Jackson*, 139 S. Ct. at 1746; 28 U.S.C. § 1332(a)(1). Our Court of Appeals recently observed that, "[t]he statute has long been interpreted to require complete diversity: no plaintiff may be a citizen of the same state as any defendant." *Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 222 (4th Cir. 2019) (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806)); *see also Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).

Section 1441(a) authorizes removal if the case originally instituted in state court could just as well have been filed in federal court. *See* 28 U.S.C. § 1441(a). Further, and particularly relevant here, is § 1441(b)(1), which provides that, "In determining whether a civil action is removable on the basis of jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded." *Id.* § 1441(b)(1). Also pertinent is § 1447(e), which provides, "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." *Id.* § 1447(e); *see also Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 232 (2007).

**B.    Authorities Pertinent to Statutory Interpretation**

The best exemplar of congressional intent is the statutory text. *See Lamie v. United States Tr.*, 540 U.S. 526, 534 (2004); *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999).

3

As the Supreme Court has noted time and again, "[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A.*, 530 U.S. 1, 6 (2000) (internal quotation marks omitted) (quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989); and then quoting *Caminetti v. United States*, 242 U.S. 470, 485 (1917)). Our Court of Appeals has noted the necessary rigor to be applied before a court might permissibly conclude statutory language is anything other than plain: "[t]o determine whether the language is plain, we consider 'the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.'" *Johnson v. Zimmer*, 686 F.3d 224, 232 (4th Cir. 2012) (alteration in original) (quoting *Newport News Shipbuilding & Dry Dock Co. v. Brown*, 376 F.3d 245, 248 (4th Cir. 2004)).

Initially, the court might encounter words that are puzzling. And at this stage of statutory analysis, "words that are not defined in the relevant statutory provisions are typically 'interpreted as taking their ordinary, contemporary, common meaning.'" *Zimmer*, 686 F.3d at 232 (quoting *United States v. Lehman*, 225 F.3d 426, 428 (4th Cir. 2000)); *see also Perrin v. United States*, 444 U.S. 37, 42 (1979). In the event some minimal outside aid is necessary at this juncture, a court is authorized to "turn to dictionaries for help in determining whether a word in a statute has a plain or common meaning." *Nat'l Coal. for Students v. Allen*, 152 F.3d 283, 289 (4th Cir. 1998).

Stated even more broadly, an ambiguity does not arise until the court has availed itself of "all the 'traditional tools' of construction." *See Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019) (agency rule) (quoting *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 n.9 (1984) (statute)). Indeed, "A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme . . . because only one of the permissible meanings

produces a substantive effect that is compatible with the rest of the law." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988). The Supreme Court has understandably recognized that the "meaning—or ambiguity—of certain words or phrases may only become evident when placed in context." *King v. Burwell*, 135 S. Ct. 2480, 2489 (2015) (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000)). Whether the chosen language is indeed plain, then, requires putting the language "in [its] context and with a view to [its] place in the overall statutory scheme." *Brown & Williamson*, 529 U.S. at 133 (internal quotation marks omitted). At bottom, a court faced with a statutory construction issue must "construe statutes, not isolated provisions." *Graham Cty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 290 (2010) (internal quotation marks omitted).

An ambiguity arises only when the statute "is susceptible to more than one reasonable interpretation." *In re Maharaj*, 681 F.3d 558, 568 (4th Cir. 2012); *see also Newport News Shipbuilding & Dry Dock Co. v. Brown*, 376 F.3d 245, 248 (4th Cir. 2004). If an ambiguity lurks, it becomes necessary to divine the statute's purpose and attribute to the language that meaning which most closely aligns with that purpose. *See Crandon v. United States*, 494 U.S. 152, 158 (1990).

Again, however, courts must resist the impulse of rushing to judgment on whether an ambiguity exists. This type of precipitous action often serves as a gateway to cracking open the legislative history, which often proves more mysterious than the statutory language it supposedly aims to clarify. At a more ominous level, the approach opens the Third Branch to the criticism of arriving at what it deems the best interpretive result instead of what Congress, through the statutory language enacted by our elected representatives, thought best. The better—and constitutional—approach, is to first pore long over the words of the statute and their context. That desirable pause

5

"prefer[s] the plain meaning," and "respects the words of Congress." *Lamie*, 540 U.S. at 536. This is not an idle rule of construction. It is a critical boundary marker between impartiality and advocacy; it is the borderline between an independent Judiciary and one that treads beyond the Founders' design. At a more practical level, it helps assure the Article III court will "avoid the pitfalls that plague too quick a turn to the more controversial realm of legislative history." *Id.*; *Azar v. Allina Health Servs.*, 139 S. Ct. 1804, 1814 (2019) ("But legislative history is not the law.") (quoting *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1631 (2018)).

C.    Analysis

### 1. Fictitious Name

As noted, the statute provides that "the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(b)(1). The subdivision was added to § 1441(b)(1) by the Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63, § 103, 125 Stat. 758, 759 (2011). While "John Doe" is often a "fictitious name[]" attached to a party unknown at the time of filing, that is not the case here.[1] As noted above, the John Doe in this case is someone known by all parties. He is one whose identity is purposely being withheld in order to avoid identifying him pending completion of an ongoing criminal investigation. The John Doe Defendant here was thus pseudonymized temporarily until such time as he might be named during the litigation.

---

[1] Indeed, the courts that have addressed this broad issue have concluded that "John Doe" is the kind of fictitious name that § 1441(b)(1) covers. *See, e.g.*, *Weaver v. Metro. Life Ins. Co.*, 939 F.3d 618, 623 (5th Cir. 2019) (noting that "John Doe" and "Unknown Payee" are fictitious names within the statute); *McPhail v. Deere & Co.*, 529 F.3d 947, 951 (10th Cir. 2008) ("Under the federal removal statutes the presence of 'John Doe' defendants at the commencement of an action creates no impediment to removal.").

The removing Defendants contend the pseudonymized John Doe Defendant must have his citizenship—although known to the Court, the parties, counsel, and anyone viewing the docket—ignored pursuant to § 1441(b)(1). They contend that anyone sued as a "John Doe" is "sued under" a "fictitious name," and the Court must thus "disregard" his known state of residence. The question is whether the removing Defendants' interpretation is consistent with the plain meaning of § 1441(b)(1). There are at least two reasons why that reading is incongruent with the statutory text.

First, the word "fictitious" is defined as "of, relating to, or characteristic of fiction: imaginary." Fictitious, Merriam-Webster (last visited Mar. 25, 2020), https://www.merriam-webster.com/dictionary/fictitious. The word "imaginary," in turn, is defined as "existing only in imagination: lacking factual reality."[2] Imaginary, Merriam-Webster (last visited Mar. 25, 2020), https://www.merriam-webster.com/dictionary/imaginary/. The noun "name" is defined as "a word of phrase that constitutes the distinctive designation of a person or thing." Name, Merriam-Webster (last visited Mar. 25, 2020), https://www.merriam-webster.com/dictionary/name. Joining the component terms together, the resulting plain meaning is a distinctive designation for a party that lacks a basis in factual reality. That meaning excludes the pseudonymized John Doe Defendant here.

---

[2] The Court is mindful of the admonition to consult "dictionaries in use at the time the statute was enacted." *See Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2363–64 (2019). There is no indication, however, that common usage of the defined terms has changed over the course of the seven (7) years since Congress amended § 1441(a). Additionally, the Court perceives no impediment in uncoupling from one another the two words in the subject phrase. *See, e.g.*, *Jaeger v. Palladium Holdings, LLC*, 884 N.W.2d 601, 605 (Minn. 2016) (quoting *Nelson v. Schlener*, 859 N.W.2d 288, 293 (Minn. 2015)) ("We can separate a phrase into its 'component terms' and then reconstruct it to determine its meaning if the phrase is not a term of art, lacks a technical meaning, and is not otherwise defined in the statute or rule."); *Nelson*, 859 N.W.2d at 293 ("Although the multi-word phrase 'trier of fact' is not defined in non-legal dictionaries, we can rely on the meaning of its component terms."). That approach appears more consistent with a primary canon of statutory interpretation. *See, e.g.*, *Espinal-Andrades v. Holder*, 777 F.3d 163, 168 (4th Cir. 2015) (stating, "[W]e must try to give every word in the statute meaning to avoid rendering its terms superfluous.").

Second, the removing Defendants' approach results in a patent absurdity. If § 1441(b)(1) drew within its scope a pseudonymized defendant for whom jurisdictional information was known but ignored, it could result in a sharp contraction of removal jurisdiction. For example, a plaintiff bent on staying in state court despite suing a slate of non-diverse defendants might just plead pseudonyms of his choosing for all of them, for reasons ranging from the legitimate to the contrived. Presumably, one of those codenamed defendants attempting to then remove the case to federal court would hit an unexpected roadblock. As noted, diversity jurisdiction, in its most common iteration, arises only when "the matter in controversy . . . is between . . . citizens of different States . . . ." 28 U.S.C. § 1332(a)(1). But if § 1441(b) captures the pseudonymized within its "fictitious name" proviso, the citizenship of the codenamed defendants would be "disregarded," presumably leaving them stateless persons for jurisdictional purposes, and hence rendering the case one incapable of being removable as "between . . . citizens of different States . . . ." 28 U.S.C. § 1332(a)(1). That anomalous and absurd result is not one the Court is prepared to attribute to Congress.

For these reasons, the Court rejects the removing Defendants' position. The diversity-destroying citizenship of the John Doe Defendant is known to all in this matter. It will thus be counted for purposes of ascertaining removal jurisdiction.[3]

---

[3] Defendants also appear to contend that the citizenship of John Doe is disregarded inasmuch as he had not yet been served at the time of removal. That contention runs counter to controlling and other precedent. *See, e.g.*, *Pullman Co. v. Jenkins*, 305 U.S. 534, 540–41 (1939); *New York Life Ins. Co. v. Deshotel*, 142 F.3d 873, 883–84 (5th Cir. 1998); *Howell v. Tribune Entm't Co.*, 106 F.3d 215, 217 (7th Cir.1997); *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir. 1983); *Pecherski v. Gen. Motors Corp.*, 636 F.2d 1156, 1160 & n.6 (8th Cir. 1981); *Preaseau v. Prudential Ins. Co.*, 591 F.2d 74, 78–79 (9th Cir. 1979).

## 2. Fees and Costs Under 28 U.S.C. § 1447(c)

Under 28 U.S.C. § 1447(c), "[a]n order remanding [a] case may require payment of just costs and any actual expenses, including attorneys fees, incurred as a result of the removal." The Supreme Court has further clarified, however, that "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447 only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

In view of the preceding discussion respecting the proper scope of § 1441(b)(1), the Court concludes that the Defendants did not lack an objectively reasonable basis for seeking removal.

## III.

Based upon the foregoing discussion, the Court **ORDERS** that the pending matters be resolved as follows:

1. That Plaintiff T.N.'s Motion to Remand is **GRANTED IN PART** insofar as it seeks remand and **DENIED** as to its residue [**Doc. 7**];

2. That the remaining pending motions are **DENIED AS MOOT**, subject to refiling in state court [**Docs. 5, 20, 23, 24**].

3. That this action is **REMANDED** to the Circuit Court of Raleigh County.

The Clerk is directed to send copies of this written Opinion and Order to all counsel of record and any unrepresented parties and a certified copy to the Clerk of the Circuit Court of Raleigh County.

ENTERED: May 7, 2020



Frank W. Volk
United States District Judge